ON MOTION FOR REHEARING.
Defendants (respondents), in their motion for rehearing, contend that the court, in holding in its opinion that there was no actual bona fide labor dispute existing between the plaintiff and the Beauticians Union, failed to consider the evidence touching on, (a) wages, (b) hours of labor, (c) company dominated union, and (d) interference of rights of employees to join a union of their own choosing.
The chronicle of events antecedent to the picketing leads inescapably, we think, to the conclusion that the sole purpose of the picketing at that particular time was to compel plaintiff to join the Hairdressers Guild and to enter into an agreement with other members of the Guild to raise prices for beauty work, fixing $3 as a minimum price for the giving of a permanent wave.
These are the demands that were made upon plaintiff, and they are the only demands that were made upon her. There is not a line of testimony to the effect that any representative of either the Guild or the union, or any other person, complained to plaintiff about the inadequacy of the wage she was paying or about the hours of labor that she was imposing, or that she was dominating the union formed by the employees of her shop, or that she was interfering with the rights of employees to join a union of their own choosing.
Miss Chapman testified that shortly after her first conversation with plaintiff, at which time she was a representative of the Hairdressers Guild, she called on plaintiff as a representative of the union. Referring to this second conversation with plaintiff, Miss Chapman testified:
"I went to her shop and told her I was in the union now and I was going to talk to her operators and I thought it was only the fair thing to do to tell her first, which I did. She said I couldn't talk to them in her shop. I said I would not expect to, because they were busy but I would talk to them after work some time, but I wanted to tell her first that I was going to do it."
This is all the testimony of any conversation with, or representations made to, plaintiff touching any subject other than the matter of raising prices in conformity with the plans of the Hairdressers Guild.
In the light of these facts, we are unable to see the slightest basis for the contention that the picketing was the result of any controversy other than the controversy with respect to plaintiff joining the Guild and agreeing to increase prices.
But there is another reason which conclusively shows that this was not a labor dispute on account of either wages or hours. Miss Chapman, who, at the time of the picketing and at the time of the trial, *Page 862 
was secretary-treasurer of the Beauticians Union, testified unequivocally that the union had taken no action with respect to fixing a wage scale or determining a standard for hours of labor. Miss Chapman, on cross-examination, testified as follows:
"Q. Did they ever have a union scale for these beauty shop operators? A. Union scale. What kind of a scale do you mean?
"Q. Did the union ever have a scale?
"THE COURT: For the wages or the work?
"MR. AYLWARD: Wages and work both.
"MR. LANGSDALE: Do you mean here in Kansas City?
"MR. AYLWARD: Right here in Kansas City.
"MR. LANGSDALE: Or elsewhere.
"MR. AYLWARD: Right here in Kansas City.
"A. Well, I told you we hadn't decided on a wage for theoperators.
"Q. (By Mr. Aylward) Then you haven't decided on the wage oror hours? A. No sir, no.
"Q. But you have decided on the price? A. We feel that if weestablish prices, then we can set the wage later.
"Q. But you never have made an attempt to establish the wages or hours for their operators? A. They have talked about it at these meetings, but it isn't settled."
Since no complaint was made to plaintiff by the union or by any other organization or person, as to wages or hours or other conditions of employment, and since the union had not even determined upon any wage scale or standard of hours of labor at the time of the picketing, it must be clear that the picketing did not involve any dispute with relation to these matters.
Furthermore, Miss Chapman's statement that "if we establish prices, then we can set the wage later" seems to be a clear admission that the purpose of the picketing was to induce the plaintiff to increase prices charged for beauty work done in her shop, and had nothing to do, directly at least, with wages.
Respondents urge that we have overlooked the relation between the price charged for beauty work and the compensation to operators, inasmuch as the union was contending for wages based upon a fifty per cent commission. The assumption that this was the position of the union is not warranted from the testimony in the record, for, as heretofore pointed out, the union had taken no action on the matter of fixing a standard of wages. The testimony that comes the nearest to affording a basis for this contention is the following testimony adduced on cross-examination of Miss Chapman:
"Q. What is a living wage in your opinion for these operators? A. I think a girl that works should have — $20.00 a week is little enough to live on.
"Q. Minimum wage? A. We don't intend to ask that much at first.
"Q. What do you intend to ask? A. We thought if we got twelve to fourteen dollars to begin on we would be doing very well. *Page 863 
"Q. (By Mr. Langsdale) That is a minimum? A. Yes.
"Q. With a percentage of the work? A. Yes."
In view of this witness' preceding testimony that the union had not yet taken any action with respect to wages, it must be clear that this testimony could be nothing more than an expression of her personal opinion as to the position the union should take on this matter, rather than a recital of any position that the union had taken. It cannot be contended that the union had adopted the commission basis for the payment of wages as its standard, because the positive testimony is that the union had not acted in this particular at all.
Respondents challenge our statement in the opinion that Vera Melching quit "on account of a personal quarrel with another operator at the Isis shop." While we do not think this involves a matter in any way decisive of any issue in the case, we nevertheless deem it appropriate to set out the testimony on which the statement in the opinion was based. It is true that this witness testified on direct examination that she quit because the hours were too long and the work was too hard. On cross-examination, however, the record discloses the following questions and answers:
"Q. Why did you quit Mrs. Purcell? Did you quit on account of fighting with some other girls? A. The hours was too long and the work was too hard.
"Q. Did you —
"MR. LANGSDALE: Let her finish the answer.
"A. And another girl kept annoying me at my work, which I reported to Mrs. Purcell, and she discussed it with this girl, and told her to leave me alone. I understand she did. . . .
"Q. (By Mr. Aylward) When did you have this argument with Mildred McAfee? A. It was before Mrs. Purcell took sick. I don't know just when the first one was; but they were both gone the last time, and I reported it to the assistant manager.
"Q. When did you make the report? A. Wednesday, and I told her I was quitting."
From this we believe it is a fair conclusion that the immediate reason at least for her quitting was the reason stated in the original opinion.
Respondents cite a number of cases in support of their motion for rehearing, a number of which were cited for the first time in their brief in support of said motion. We have, however, examined all of the cases cited, and none of them appears to us to be in conflict with our opinion herein.
We believe all other points raised by respondents' motion which are pertinent to the issues in the case are sufficiently covered in the original opinion.
It follows that the motion for rehearing should be overruled. It is so ordered. *Page 864